Good morning, Betsy Stevens for the Appellant Deb Cardy. What happened here in this case, as best we can tell, is that Ms. Cardy's benefits were terminated based on the ALJ's decision that she was performing substantial gainful activity beginning in January 1999. And the problem with that, as we see it, is that the evidence in the record does not separate on her tax returns for the year 1999. Ms. Cardy also worked perfectly. Can I just address that? Because I know that's your argument, but didn't the ALJ leave the – was it ALJ? Yeah, the ALJ left the record open for a period of time because these questions arose, the greyhound versus the travel business and, you know, the business plan showing some profit and so on and so forth. Wasn't that all left open so that it could be clarified? And nothing was submitted as far as I can see. Well, the non-interning representative that Ms. Cardy had at the hearing level did submit a brief after the hearing and submitted some amended tax records. But the problem was that if you read the transcript of the hearing, it's pretty clear that the ALJ didn't know what was going on, that the representative didn't know what was going on. No one focused on the time period from January 1999 until 2000. No one ever asked Ms. Cardy specifically to separate out her greyhound income, which was an unsuccessful work attempt and, therefore, that income doesn't count, and anything that she may or may not have made from her business being her peace of mind. Well, that doesn't – so you say the non-attorney representative submitted a brief with some amended tax returns, but whose responsibility was it to clarify it when the ambiguities and the concerns were quite clear during the course of the hearing and the ALJ left the record open for purposes of that? Whose fault is that? Well, I don't think it's necessarily anyone's fault. Well, I don't think anyone knew at the hearing, at the time of the hearing, or even after, which time period we were looking at. That's always – I mean, isn't that always the case? I mean, isn't it an issue as to time periods? I mean, wouldn't one think that whoever is representing the claimant at that time would have some sensitivity to the fact that time periods are significant in this area? I think that's true. I mean, then that's a – I mean, the record's just not there. It's just not done. The opportunity was given, and if your argument is, well, you know, the person who – representing the claimant at that time was not competent or was, you know, somehow deficient, maybe, I don't know. But we have the record. I mean, it's very hard for us to go back and say, well, you know, there should have been a better lawyer representing this person in the initial stages. I mean, you fault the ALJ for opening up the record and saying put in anything that you want. My goodness, I mean, judges do that all the time. I mean, and lawyers either present evidence or not, don't they? Well, yes, but the thing here is that at the hearing, the ALJ was talking about Ms. Carty's business activities in 2002 and in 2000, and when no one ever focused on the – in order to decide that Ms. Carty was performing substantial gainful activity in January 1999, the ALJ needed to know how much income she had and what services she was performing on behalf of this business. And the ALJ didn't have information on what services she was performing because all of the information that he had was supplied on forms that Ms. Carty filled out in 2002 based on her activities at that time, at that present time. And in 1999, Ms. Carty's business existed pretty much in name only. She was not – she has said that she worked at Greyhound from April to August of 1999, and then she found out she had cancer and didn't – wasn't running her personal business until the middle of – well, later on in 2000. So the bottom line is that the ALJ didn't have enough information. How much income came in – how much net income came in for her travel business in 1999? I don't think that that's – I don't think that it's known whether – on the tax return – whether that income includes the Greyhound job or whether it doesn't. What was her overall net income in 1999? In 1999, I believe her adjusted gross income was $3,000. So I'll have to look it up. There was an amended return, yeah. Okay, that's okay. If you don't know it off the top of your head, it's in the record. No. Well, basically, for the ALJ to decide that she was performing substantial gainful activity, he would have needed to know how much of her income came from her business and what services she was performing in 1999 on behalf of that business. And did she have that information in her possession? She may have, but I don't think that anyone ever asked her specifically about that time period. Every form that she got from Social Security asked her to describe her present activities, and that was in 2002. So she had no way of knowing that what Social Security wanted was what she was doing in 1999 until – I don't think anyone really understood until this was briefed in the district court exactly what time period we were looking at and what information needed to be found. So, I mean, the – Well, you must have known at some point during the ALJ hearing that the ALJ was interested in terms of when she was earning enough income that she was going to be taken off the rolls. Well, it really wasn't clear. If you look at the transcript of the hearing, it wasn't clear that the ALJ was interested in 1999. It was – he was talking about why the bank would loan money to someone when their business wasn't making a profit, and there was a lot of discussion about a lot of stuff that the ALJ himself said were jumping around so much that I don't know what's going on. It's in the transcript. Okay. Okay.  Well, you've got quite a bit of time saved. Thank you. May it please the Court, my name is Terry Shea. I'm appearing for the Commissioner of Social Security. Good morning. This case is quite a relief for me actually because we're not talking about horrible disabling conditions. We're talking about money and where it was and whether or not this particular taxpayer or claimant was credible. She submitted a number of documents that are normally signed under penalty of perjury, that is income tax returns, and indicated she had her business going in 1998, 1999, and beyond. The ALJ asked her direct questions. Where was all this money that came from in 1999? She said, oh, that was all from ticket sales at Greyhound. Well, what about the additional income? Oh, that was all from her boyfriend. And he was during drywall. It's like nobody was doing anything with the peace of mind in 1999. It's pretty much what she was saying. So when she said that, what are you going to ask her? Well, what were you doing in the business that you've already said didn't exist? But all the other paperwork that eventually came in said that it did exist. She used that information for business plans. She used that information undoubtedly for bank loans. She signed income tax returns. When you say undoubtedly, that's always a weasel word. Okay. Normal practical experience when you go to a bank and you ask for money, they don't just take your word for it. They want to look at your bank statements. They want to look at your tax returns. They want solid proof that you have what you say you have. Practical experience outside the record. What is in the record, however, is her tax returns. They are signed under penalty of perjury. Just above your signature. Yeah, yeah, yeah. Now she later says, you know, oh, I don't know. I don't know. And says, oh, well, I was talking about another year, and goes back and forth with that. She also says she's been in this business for 30 years. You know, there are so many contradicting statements, and there was no effort by the claimant to sort it out. At one point in the hearing, her advocate said, well, she didn't even sign these. She didn't even fill these out. Commingling of funds is something that could be easily proved by a statement from her friend, her boyfriend, whatever you want to call them. None of that was forthcoming. Now, during the hearing, the way you just recounted it, there was, in fact, a focus on where income in the 98-99 time period had been generated from. That was flagged in that hearing. It ultimately descended into confusion and led to the open order. Is that correct? Or counsel suggested that the focus was on later years and not on the 99-98 time frame. Well, the ALJ directly addressed income that was on her 1992 tax return, 1999 tax return. And her response to that was, well, it wasn't peace of mind. It was all ticket sales and or my boyfriend's business or loans, all of which could easily be sorted out and verified, but was not. She also made statements, or her advocate made statements, that we just figured out today that things were misstated and things weren't included. But the taxpayer, I mean, the claimant also said, well, I filed amended tax returns already in the Social Security. I mean, Internal Revenue Service has accepted them. So obviously she didn't just find out. It was an ongoing issue. She said she was being audited in many places in the record. So, you know, basically it comes down to who would know what your income is. Well, usually you would. Who would know what was happening with the business? Well, usually you or your accountant would. Her tax returns were also prepared by qualified accounts, as far as we know. They're qualified. That they would make such a huge mistake and include loans as gross receipts is itself kind of incredible. But, again, that wasn't verified, as it easily could have been, by sending the amended tax returns and some sort of statement from the IRS that it actually agreed or made some change based on that. In any event, your position is that the opportunity was given to the claimant to clarify these issues and it wasn't? Absolutely. Even when she admitted she was making income, DLJ asked her, are you working now? She said no. He said, okay, when did the business stop? She simply wouldn't answer the question. You know, it was all over the place. You know, when you're asking, DLJ asks her a direct question and she really kind of won't answer. What are you going to go with that? You can't just browbeat her with it. You basically said, you know, you need to sort this out. I'm leaving the record open. So I think that DLJ did what he reasonably could do, given her presentation at the hearing and given all the paperwork with all the conflicting statements, dates, claims, and money. Okay. Do you have any views as to why we're getting so many cases and Social Security out of Oregon? Well, thank you for asking. No, this is unrelated to this case. I don't want this to in any way influence this case. You know, the case law, you know, there is often anecdotal indications that it's Ninth Circuit decisions as opposed to it's really different in Oregon than it is across the country. But if you look at case law across the country, the decisions are not that different. It could be volume of cases. It could be the fact that people tend to look to Social Security when they run out of money from other sources. There's high unemployment in the West Coast, and that's one thing that people who are out of work become more depressed. Their physical ailments become more annoying. And at that point, they go to this as a last resort. That could be it. But again, you know, because we don't do those kinds of studies and we don't step back. And at least from the Office of the General Counsel, we don't try to come up with percentages. These LJs allow more than those LJs because that's not our job. Okay. Could be. Okay. So short answer is you don't really know. That's right. Okay. Thank you. Unless Cardi has anything else. No, thanks. Thank you. Response? You've saved a couple minutes. Okay. I'd just like to say that if you look at the transcript of the hearing, it's pretty clear that Ms. Cardi didn't understand that the year that was in question was 1999. Every time the ALJ asked her a question about, you know, where did this amount of money come from and what were these receipts for, she answered his questions. She gave answers to all the questions that she was asked. The problem was that no one knew the right questions to ask at the time. And there's no intention on her part to hide anything. She submitted all of her tax records. I don't think that anyone understood that it would all come down to January 1999 until. Well, is it true that the ALJ was looking at the 1999 tax return and was asking about that income that's shown? That is true. Okay. So if you're sitting there as the representative, even if understandably, and it was obvious from the transcript, this witness was easily distracted on collateral issues, but that's why it's important to have a representative. And this representative was there and certainly wouldn't, as a competent representative, ignore that 1999 was one of the areas of inquiry. So, therefore, part of the opportunity to respond may address other time periods too, but it's hard to understand why they wouldn't explain the 1999 tax return. Well, when questions were asked about the 1999 tax returns, they answered those questions. They were talking about the Greyhound ticket receipts and trying to explain how that business worked. And then they moved on to other issues, and I don't think that anyone is blaming. You have a page of the transcript in front of you, or the site? Well, I'm looking at page 267. Okay. Well, that's fine. You don't have to elaborate. I'll just take a look at it. I think 267 would be a good example of what you're saying. Yes. Okay. So, unless any further questions. I think that'll do it. Thank you very much. Thank both sides for your argument. Yeah.
judges: Fletcher, Fisher, Fletcher